UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

JOHN PAULOSE,

                                                   Plaintiff,

                        -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                                             Defendant.

------------------------------------------------------------------------ x

**DEFENDANT'S LOCAL CIVIL RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

05 Civ. 9353 (DLC)(GWG)

Defendant, the New York City Department of Education ("DOE"),[1] by their attorney Michael A. Cardozo, Corporation Counsel of the City of New York, respectfully submits, pursuant to Rule 56.1 of the Local Civil Rules of the Courts of the Southern District of New York, that the following facts are undisputed:

1.      Plaintiff, born in Teekoy, India, self-identifies as an Asian of East Indian national origin. See Pl. Tr.: 10:15-16; complaint, filed November 3, 2005 ("Complaint"), Exhibit "A" at ¶ 6.[2]

2.      Prior to working with the DOE, plaintiff worked in the financial services industry and had no prior teaching experience. See Pl. Tr. 17:10 – 25; 57:23; Plaintiff's Resume, Exhibit "Y."

3.      IS 339 is a middle school in the Bronx, N.Y., and is in DOE's Region 1.

4.      In June 2003, the principal of IS 339, Charles Randina, nominated plaintiff for a probationary teaching position at IS 339. See Pl. Tr.: 58:18-25; see letter from the Principal

---

[1] Formally, the Board of Education of the City School District of the City of New York.

[2] All exhibits are annexed to the declaration of Jennaydra D. Clunis, dated September 8, 2006 ("Clunis Decl."). All references to "Pl. Tr." are to the transcript of the deposition of plaintiff, taken April 28, 2006, which is annexed to the Clunis Decl. as Exhibit "B."

Randina, to Miriam Johnson of the Region 1 operations center, dated September 24, 2003, Exhibit "D."

5.      On October 31, 2003, Principal Randina evaluated plaintiff's teaching by observing a class ("observation") and gave plaintiff an unsatisfactory rating for this observation. See Pl. Tr.: 88: 22; 88: 19 -24; see Observation Report, dated October 31, 2003, Exhibit "G."

6.      On January 29, 2004, Principal Randina made another observation of plaintiff teaching a class and again gave plaintiff an unsatisfactory classroom rating for this observation. See Pl. Tr. 85:16-17; see Observation Report, dated January 28, 2004, Exhibit "H."

7.      On January 30, 2004, Assistant Principal ("AP") Daisy Altreche conducted a third observation of plaintiff's classroom teaching and found it unsatisfactory. See Pl. Tr. 85: 16-17; see Observation Report, dated January 30, 2004, Exhibit "I."

8.      That same day, January 30, 2004, plaintiff met with his union representative, Bob Levine, AP Altreche, and Principal Randina in the principal's office. During that meeting, plaintiff signed a resignation letter, dated January 22, 2004, at the request of Principal Randina, Mr. Levine, and AP Altreche. See Pl. Tr.: 85:16-25; 85:1-25; 86:1-25; 140:5-20; 146; see plaintiff's resignation letter, Exhibit "E."

9.      On the same day, plaintiff asked to rescind his resignation letter. See Pl. Tr.: 146:5-25; see plaintiff's rescission letter, dated January 30, 2004, Exhibit "F."

10.      Plaintiff was permitted to rescind his resignation. Id.

11.      Plaintiff testified that if the DOE terminated him it would be more harmful to his career as a teacher, than a resignation. See Pl. Tr. 141:6-10; 141:15-19; 141:20-25; 142:1-4.

12.      The DOE had the power to terminate plaintiff, at any time, during his probationary period. See Pl. Tr. 141:2-5.

13.     Plaintiff testified that in the third week of January 2004, he began to suspect that sexual misconduct occurred at IS 339 after he had a conversation with two female students. See Pl. Tr. 73:12-25; 74: 1-4; .76: 3-6.

14.     In January 2004, plaintiff also learned about other alleged acts of misconduct, including racial discrimination and sexual molestation, which was purportedly occurring at IS 339. See Pl. Tr. 72:3; 73:1-12; 74:9-25; 75:1-25; 76:1-25; 76:1-21.

15.     Most of the alleged acts of discrimination and sexual molestation, that were purportedly occurring at IS 339, were told to plaintiff by AP Williamson. See Pl. Tr.: 76: 7-12.

16.     Plaintiff stated that another teacher, Mr. Rosado, told plaintiff about another teacher who Mr. Rosado thought was discriminated against on the basis of race. See Pl. Tr.: 76:15-25.

17.     On February 1, 2004, plaintiff was reassigned from the classroom to the district office, a non-teaching position. See Pl. Tr. 71:14-15.

18.     On or about February 12, 2004, 10 days after he was transferred to the district office, plaintiff wrote his first letter reporting the alleged sexual misconduct and race discrimination that allegedly occurred at IS 339 See Pl. Tr. 74:22-24; see Letter from plaintiff to the Superintendent of Region 1, Irma Zardoya, dated February 12, 2004, Exhibit "N."

19.     On or about February 27, 2004, after speaking with AP Williamson, plaintiff wrote letters and e-mails to the DOE Chancellor and the Superintendent of Region 1, Irma Zardoya, reporting the alleged acts of misconduct. See Pl. Tr. 79:5-20; 80:1-9; 81:4-23; 130:23-25; 131:1-13; 132: 4-11; 133:10-25; 134:1-21; see Email from plaintiff to Chancellor Klein, dated February 27, 2004, Exhibit "O"; see Email from plaintiff to Superintendent Zardoya, dated February 27, 2004, Exhibit "P."

20.    Plaintiff bases his allegation of discrimination on racial insults from two teachers and three newspaper articles sent to plaintiff from his union representative, Robert Levine.  See Pl. Tr.: 116:11-16; 125:14-25; 126:1-3; see February 22, 2004 New York Times article, "The Newest Road to the American Dream" ("Feb. NY Times Article"), Exhibit "K;" March 14, 2004, New York Times article "Corporate America Sending More Legal Work to Bombay" ("March NY Times Article"), Exhibit "L;" Letter from Robert Levine to plaintiff, dated August 18, 2004 ("August Mailing"), Exhibit "M."

21.    Plaintiff testified that, on two occasions, two unidentified White teachers made racial comments to him after he was removed from the classroom.  See Pl. Tr.: 113:18-25; 114: 1-11; 115:14-16, 25; 115:1-12.

22.    Plaintiff admits that his union representative sent the articles to him because his union representative thought plaintiff would find the articles interesting.  See Pl. Tr.: 116:13-16; 21-25; 117:1-2; 118:14-17.

23.    During the week of February 22, 2004, Mr. Levine sent plaintiff a newspaper article about the "American dream…to open up a cell phone store."  See Pl. Tr.: 109: 4-11; 118: 10-17; see Feb. NY Times Article, Exhibit "K."

24.    During the week of March 11, 2004, Mr. Levine sent plaintiff a newspaper article about "corporate America sending more legal work to Bombay."  Plaintiff perceived it as a racial insult and interpreted it to mean that Mr. Levine was "telling [him] not to be a teacher in New York City or not to even be in this country.  See Pl. Tr. 121: 13-25; 122: 1-2; see March NY Times Article, Exhibit "L."

25.    On April 5, 2004, plaintiff's probationary services were discontinued.  See Pl. Tr. 152: 24-35; 153:1-6.

26.     On or about August 23, 2004, four months after plaintiff's termination, Mr. Levine sent plaintiff a letter and a third newspaper article that discussed computer call centers in India. See Pl. Tr. 122: 17-25; 124: 9-16; 125: 7-8; see August Mailing, Exhibit "M."

27.     Plaintiff testified that he interpreted the mailing, including Mr. Levine's statement "I hope you are having a nice summer," as a racial taunt. See Pl. Tr. 123:1-18.

28.     After his termination, plaintiff continued to write letters to DOE to complain about how he was allegedly treated while he worked at IS 339 and the circumstances surrounding his termination. See Pl. Tr. 132: Letter from plaintiff to Superintendent Zardoya, dated April 14, 2005, Exhibit "T;" see Letter from plaintiff to Chancellor Klein, dated April 14, 2005, Exhibit "U;" see Letter from plaintiff to Richard Cordon of the Office of the Special Commissioner of Investigations, Exhibit "V."

29.     In September 2004, plaintiff applied for a teaching position at Beach Channel High School ("Beach Channel H.S.") in Queens, NY and Region 5. See Pl. Tr.: 149:17-25; 150:1-9.

30.     In September 2004, Beach Channel H.S. was designated a school in need of improvement ("SINI") under the federal "No Child Left Behind Act" (the "Act") and, consequently, must hire teachers in accordance with the requirements set forth in the provisions of that Act. See Pl. Tr. 57:14-17; see Declaration of Dr. David Morris, dated September 5, 2006 ("Morris Decl."), at ¶ 2.

31.     One of the provisions of the Act is that only certified teachers can teach in a SINI school. See No Child Left Behind Act § 1119(a)(1); see id.

32.     The State Education Department issues different types of certificates. A provisional certificate is given to teachers who are in the early stages of their careers and may be working to the completion of all the State requirements for a permanent certificate. See Morris Decl. at ¶ 3; see Pl. Tr. 56: 9-25; 57:1-11.

33.     A permanent certificate is given to a teacher who has met all of the requirements of the State. See id.

34.     A permanent certificate was required to teach at Beach Channel H.S. under the federal Act. See id. at ¶ 2.

35.     On or about September 30, 2004, the AP-Organization of Beach Channel High School, Robert Brevetti, interviewed plaintiff for a math teaching position at Beach Channel H.S. See id. at ¶ 4

36.     After plaintiff's interview with AP Brevetti, Dr. Morris submitted a letter to the regional operations center for Region 5 nominating plaintiff for a math teaching position at Beach Channel. See Pl. Tr. 149: 12-25; 150: 1-25; see Letter from Dr. Morris, to the personnel liaison for Region 5, Ovella Wilson, Exhibit "Y."

37.     At that time, plaintiff did not have a permanent certificate in mathematics for grades 7 through 12. See Pl. Tr. 12: 18-25; 13:1; 56: 8-14; 151: 14-18; see Morris Decl., at ¶ 4; see Plaintiff's Provisional Teaching License, Exhibit "C."

38.     The regional operations center for Region 5 informed Beach Channel H.S. that plaintiff did not have a permanent certificate in math for grades 7 through 12. See Morris Decl. at ¶ 4.

39.     Plaintiff was ineligible for a position at Beach Channel H.S. See id.

40.     Plaintiff was not hired for the math teaching position at Beach Channel H.S. because he did not have the proper certification in math. See id. at 5.

41.     Plaintiff received his master's degree in Education in December 2004. See Pl. Tr. 12: 18-25; 13:1.

42.     Plaintiff basis his allegation that he was "blacklisted" from future employment with the DOE on the fact that he was not offered a position at Beach Channel High School. See Pl. Tr. 149: 12-25; 150: 25; 151: 1-25; 153: 3-7.

43.     Plaintiff believes despite his termination from IS 339, if he was Caucasian he would be able to get another job at the DOE. See Pl. Tr. 153: 17-25.

44.     Plaintiff testified at his deposition that the sole basis for this belief was a few newspaper articles indicating that teachers were being hired after they were terminated. See Pl. Tr. 154: 1-20.

45.     Plaintiff's name was never placed on the Inquiry List for the DOE and he is not prohibited from obtaining employment with the DOE if he meets the employment requirements for the position. See Declaration of Carmela Cuddy, dated September 5, 2006, at ¶ 3.

Dated:        New York, New York
              September 8, 2006

                                        MICHAEL A. CARDOZO
                                        Corporation Counsel of the
                                          City of New York
                                        Attorney for Defendant
                                        100 Church Street, Room 2-188
                                        New York, N.Y. 10007-2601
                                        (212) 788-8703


                      By:     _____
                                        Jennayda D. Clunis (JC 1908)
                                        Assistant Corporation Counsel